**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

**KAREN W.,**

     **Plaintiff,**

**vs.**                                                            **CIVIL ACTION NO. 2:23-CV-00044**

**KILOLO KIJAKAZI,
ACTING COMMISSIONER
OF SOCIAL SECURITY,**

     **Defendant.**

**<u>PROPOSED FINDINGS AND RECOMMENDATION</u>**

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered January 19, 2023 (ECF No. 4), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the Plaintiff's Brief in support of her claim and the Defendant's Brief in Support of Defendant's Decision. (ECF Nos. 12, 13)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** the Plaintiff's request for remand (ECF No. 12), **DENY** the Defendant's request to affirm the decision of the Commissioner (ECF No. 13); **REVERSE** the final decision of the Commissioner; and **REMAND**

1

this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed her application for DIB on July 23, 2020 alleging her disability began on June 9, 2020 due to kidney disease/renal failure stage 3, anxiety, depression, permanent nerve damage, high blood pressure, and heart blockages. (Tr. at 46, 259) Her claim was initially denied on January 14, 2021 and upon reconsideration on June 10, 2021 (Tr. at 46, 89-103, 105-121). Thereafter, the Plaintiff filed a written request for hearing on July 2, 2021. (Tr. at 148-149)

An administrative hearing was held on March 3, 2022 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ"). (Tr. at 64-84) On April 29, 2022, the ALJ entered an unfavorable decision. (Tr. at 43-63) On May 27, 2022, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 228-230) The ALJ's decision became the final decision of the Commissioner on November 21, 2022 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-7)

On January 18, 2023, the Plaintiff brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Defendant, (hereinafter referred to as "the Commissioner") filed a Transcript of the Administrative Proceedings. (ECF No. 7) Subsequently, the Plaintiff filed a Brief in support of her complaint (ECF No. 12); in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 13), to which the Plaintiff filed her Reply Brief (ECF No. 14). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

The Plaintiff was 54 years old as of the alleged onset date, considered a "person approaching advanced age", though by the date she filed her claim, she had transitioned into a new age category, and subsequently considered a "person of advanced age" during the underlying proceedings. See 20 C.F.R. § 404.1563(d), (e). (Tr. at 89, 68) She graduated high school and completed a couple of years at Parkersburg Community College. (Tr. at 262) For the last fifteen years before applying for benefits, she worked as a bookkeeper and office manager, both characterized as sedentary and skilled positions. (Tr. at 79)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether the claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded

benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. § 404.1520a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Section 404.1520a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently,

appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.

      (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

      (4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. § 404.1520a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. § 404.1520a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. § 404.1520a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. § 404.1520a(e)(4).

## **Summary of ALJ's Decision**

In this particular case, the ALJ determined that the Plaintiff met the insured status requirements through December 31, 2025. (Tr. at 48, Finding No. 1) Next, the ALJ determined the Plaintiff satisfied the first step of the sequential evaluation process because she had not engaged in substantial gainful activity since the alleged onset date of June 9, 2020. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff had the following severe impairments: chronic kidney disease (CKD); history of abdominal aortic aneurysm; history of renal failure; carotid artery stenosis (CAS); renal stenosis; diabetes mellitus (DM); polyneuropathy; peripheral vascular disease (PVD); coronary artery disease (CAD); degenerative disc disease (DDD) of the cervical spine; bilateral vestibular disorder; right shoulder rotator cuff tendinopathy and partial thickness tear with subacromial impingement; and osteoarthritis. (Tr. at 48-49, Finding No. 3) At the third inquiry, the ALJ concluded the Plaintiff's impairments did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 50, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work except

> she can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. The claimant is capable of tolerating only occasional exposure to extreme cold, heat,

atmospheric conditions as that term is defined in the Selected Characteristics of Occupations (SCO), and workplace hazards such as moving machinery and unprotected heights. She is capable of only occasionally pushing, pedaling, or stomping bilaterally with the lower extremities. She is capable of frequently reaching overhead with the right upper extremity. The claimant requires the use of a cane in order to ambulate.

(Tr. at 54, Finding No. 5)

At step four, the ALJ found the Plaintiff is capable of performing her past relevant work as a bookkeeper, office manager, and payroll clerk. (Tr. at 58, Finding No. 6) Finally, the ALJ determined the Plaintiff had not been under a disability from June 9, 2020 through the date of the decision. (Tr. at 59, Finding No. 7)

**The Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff alleges the ALJ failed to include her mental impairments in the RFC determination despite finding mild limitations in the functional areas of concentrating, persisting, or maintaining pace and adapting or managing herself; the ALJ also failed to explain why those limitations were excluded from the RFC assessment. (ECF No. 12 at 3-6) The Plaintiff points out that courts in this District have remanded cases for such failures. (Id. at 6-7) The Plaintiff argues that remand is necessary: this is error is not harmless, because the ALJ's omission here forces the Court to speculate why those limitations were excluded, thus impeding meaningful review. (Id. at 7-9) The Plaintiff also contends that the ALJ failed to perform an adequate "credibility" assessment because she did not consider the Plaintiff's "stellar work history"; this is another error that warrants remand. (Id. at 9-10)

In response, the Commissioner contends that the ALJ's finding that the Plaintiff's mental impairments were nonsevere, and only caused mild to no limitations in the broad areas of mental

functioning. (ECF No. 13 at 8-9) Further, the Fourth Circuit, other courts within this Circuit, and this Court itself have rejected arguments that an ALJ must include mental limitations in the RFC when the ALJ determined such impairments do not actually result in work-related functional limitations. (Id. at 9-10) The ALJ in this case appropriately considered the Plaintiff's mental impairments, and noted that she routinely displayed normal mental functioning on examinations, and that she reported being capable of performing multiple activities of daily living and controlling her mood. (Id. at 10-11) The Commissioner argues that the ALJ provided an explanation for her conclusions which showed that even the mild limitations had no impact on the Plaintiff's ability to perform her past relevant work. (Id. at 11-12) The Commissioner also points out that although "credibility" assessments are no longer appropriate under the Regulations; while a claimant's work history will be considered in evaluating subjective statements, the ALJ was not required to discuss all the factors mentioned under Section 1529. (Id. at 12-13) The ALJ in this case did acknowledge the Plaintiff's prior relevant work, and other courts within this Circuit have found that an ALJ's failure to mention a lengthy work history standing alone is not reversible error. (Id. at 13-14) Regardless, there is no indication that further examination of the Plaintiff's work history would have affected the outcome of this decision. (Id. at 14) Based on the record, the Commissioner contends that substantial evidence supports the ALJ's decision and asks this Court to affirm. (Id.)

In reply, the Plaintiff emphasizes that in this case, just like the other cases before this Court, the ALJ failed to explain why no mental limitations were included in the RFC after step 2. (ECF No. 14 at 1-2)The Plaintiff asserts that this error is magnified by the fact that the ALJ found her capable of returning to her past relevant work, which is considered skilled; because her mild mental limitations were not addressed in the RFC or explained why they were not included, this can have

8

a significant impact on performing skilled work, and thus equates to a finding of disability. (Id. at

3-4) Because this was not explained by the ALJ after step 2, remand is necessary. (Id. at 4)

**The Relevant Evidence of Record**[1]

The undersigned has considered all evidence of record, including the medical evidence,

pertaining to the Plaintiff's arguments and discusses it below.

**The Medical Record:**

Mental Health Treatment History:

The Plaintiff was assessed as negative for depression, insomnia, and anxiety during late

2019 visits to her nephrologist, who was treating her for chronic kidney disease; she was further

noted to be oriented to person, place, and time (Tr. at 354-356, 358-60). During 2019 visits to

CAMC Vascular Center, the Plaintiff denied anxiety or depression and appeared alert and oriented

(Tr. at 392, 413).

The Plaintiff first reported depression during a visit to her family doctor on September 4,

2019, but described the condition as "situational" (Tr. at 557). On mental status examination, she

was oriented to person, place, and time; displayed fluent speech; showed coherent thought

processes and good insight; had intact recent and remote memory; had an appropriate fund of

knowledge; had intact higher cognitive functions; and showed neutral mood and appropriate affect

(Id.). She also denied suicidal or homicidal ideations (Id.).

The Plaintiff displayed identical or greatly similar results on appointments with her family

---

[1] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. Therefore, for purposes of this Proposed Findings and Recommendation, the focus is on the Plaintiff's alleged mental impairments and their resulting limitations.

doctor through June 2021 (Tr. at 459, 463, 488, 492, 496, 501, 504, 508, 512, 516, 520, 524, 529, 533, 537, 541, 545, 552, 795, 863). She also told her doctors that she "[did] not want anything for [her depression] at this time" (Tr. at 541, 545).

During a visit in September 2021, the Plaintiff reported feeling "more depressed than normal" due to stressors arising from the anniversary of her significant other's death and her physical impairments; however, her mental status exam was otherwise normal (Tr. at 793-795).

The Plaintiff visited CAMC Vascular Center on August 13, 2021, for her physical impairments (Tr. at 936). During this visit, she was found to have "no anxiety, depression," but did report little interest or pleasure in doing things and feeling down, depressed, or hopeless on certain days (Id.).

In her application for DIB, the Plaintiff reported taking Fluoxetine for her depression (Tr. at 343, 474). Aside from her medication, there is no evidence from the record that the Plaintiff received any specialized treatment for her mental health, such as therapy, counseling, or psychiatric treatment; the record does not reflect any medical evaluations by specialized mental health professionals aside from those employed or consulted by the Agency during the disability application process.

Prior Administrative Medical Findings:

Joseph A. Shaver, Ed.D., a state agency psychologist, reviewed the Plaintiff's medical records in December 2020 and found that she had nonsevere mental impairments as she had no limitation in understanding, remembering, or applying information; no limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and mild limitation in adapting or managing oneself (Tr. at 95-96). In June 2021, state agency psychologist Karl G.

Hursey reviewed the Plaintiff's updated medical records and agreed with Dr. Shaver's findings (Tr. at 112-113).

**The Administrative Hearing:**

    <u>The Plaintiff's Testimony:</u>

    The Plaintiff testified that pain and swelling in her left leg were the primary reason for why she is unable to work, though she stated that she cannot function well on pain medications, and found it "next to impossible to function" without them, which "put me in a big depression" as she cannot go anywhere or do anything. (Tr. at 68-69) She stated that she is no longer able to do anything she enjoys and wished she could work, as she always has, but she just can't. (Tr. at 69) She testified that her Gabapentin interferes with her concentration and focus, and does not think she could bookkeep anymore. (Tr. at 74) She indicated that she has trouble finishing her sentences, too, and that "it's really depressing because I've always felt as though I was intelligent and I kinda feel like now I'm getting really dumb because I can't think of things." (<u>Id</u>.)

    <u>The Vocational Expert's Testimony:</u>

    Vocational expert ("VE") Edith Edwards characterized the Plaintiff's past work as skilled to semi-skilled sedentary positions (Tr. at 79). The ALJ posed a number of hypothetical scenarios to the VE including all of the Plaintiff's physical exertional limitations as outlined in her RFC finding, and the VE responded that the hypothetical individual would be capable of performing all three of the Plaintiff's past positions (Tr. at 79-81). The Plaintiff's attorney posed additional hypotheticals to the VE based on physical impairments but did not ask about any hypothetical mental limitations (Tr. at 83-84).

**<u>Scope of Review</u>**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." <u>Blalock</u>, 483 F.2d at 775.

**<u>Analysis</u>**

<u>The Absence of Mental Limitations in the RFC Assessment:</u>

The RFC determination is the "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *1. The RFC is a finding as to the most a claimant can still do in a work setting despite her functional limitations. See 20 C.F.R. § 404.1545(a)(1). The RFC is an administrative finding within the ALJ's exclusive jurisdiction. See <u>Id</u>. § 404.1546(c); see also <u>Id</u>.

§ 404.1520c(a) (instructing that ALJs will not defer to medical opinions or prior administrative medical findings). The ALJ reviews "all of the relevant medical and other evidence" in the record and is charged with resolving conflicts in the evidence. Id. § 405.1545(a)(3). See also SSR 96-8p, 1996 WL 374184, at *5.

There is no dispute between the parties as to the ALJ's findings concerning the four broad areas of functioning, and of relevance here, the ALJ found only two in which the Plaintiff had mild limitations.[2]

In the area of concentrating, persisting or maintaining pace, the ALJ found the Plaintiff had a mild limitation, and based this conclusion on the following evidence of record: the Plaintiff reported problems with concentration in both her Function Report and at the administrative hearing, although she also could perform activities that require a degree of concentration, persistence, and pace such as driving a motor vehicle, using a computer, and managing her finances (Tr. at 49, 303-310); and treatment notes from her medical providers at Ravenswood Family Medical Center (RFMC) show that the Plaintiff consistently had been able to perform Serial 7's tasks accurately (Tr. at 49, 459, 463, 488, 492, 496, 501, 504, 508, 512, 791, 795).

In the area of adapting or managing oneself, the ALJ found the Plaintiff also had only mild limitations, again noting treatment records from RFMC from December 2021 indicate the Plaintiff was positive for anxiety, depression, and sleep problems (Tr. at 49, 808), and that she reported having mood changes and depression (Tr. at 49, 790)[3]. "Despite the positive findings," the ALJ

---

[2] The ALJ found the Plaintiff had no limitations in the areas of understanding, remembering or applying information or in interacting with others. (Tr. at 49)

[3] The note indicates that the Plaintiff "reports continued depressive symptoms with brothers gender change, significant other being deceased for 1 year and worsening health limiting what she can do[.]"

also noted that the longitudinal record shows that the Plaintiff denied having anxiety and/or depression on multiple occasions (Tr. at 49-50, 354, 358, 392, 413, 448, 936) and that she presented for being "well groomed" on multiple occasions (Tr. at 50, 458, 462488, 491, 495). The ALJ again consulted the Plaintiff's Function Report, wherein she stated she is capable of a number of daily activities, including caring for her pets, managing her personal care, preparing light meals, using a computer, doing light household chores, driving a motor vehicle, managing her finances, and online shopping (Tr. at 50, 303-310). Finally, the ALJ noted that the Plaintiff's longitudinal record also supported a finding that the Plaintiff had mild limitations in adapting or managing oneself. (Tr. at 50)

From the foregoing evidence, the ALJ determined that because the Plaintiff's medically determinable mental impairments "cause no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate there is more than a minimal limitation in the claimant's ability to do basic work activities, they are nonsevere." (Id.) The ALJ then observed that the limitations she found in the "paragraph B" criteria are not an RFC assessment, and used to rate the severity of mental impairments in steps 2 and 3 of the sequential evaluation process, noting that at steps 4 and 5, the mental RFC requires "a more detailed assessment." In sum, "[t]he following RFC assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." (Id.)

The ALJ next evaluated the opinion provided by the State Agency psychological consultants, finding them persuasive, and acknowledged they also had the same "paragraph B" functional limitations as those set forth above. (Tr. at 50, 89-103, 105-121) The ALJ found their opinions were supported by the longitudinal record, which showed that the Plaintiff "reported

problems with focus and had anxiety/depression symptoms at times but still is capable of performing multiple activities of daily living and controlling her mood." (Tr. at 50, 303-310, 790, 488, 492, 496)

Of significance to the case at bar is that both parties find pertinent case law to support their respective arguments as they relate to the lack of mental limitations in the ALJ's RFC determination – most of this jurisprudence comes from this very Court, suggesting a split within this District, though each case is factually nuanced to varying degrees. For instance, in *Shank v. Saul*, No. 3:20-cv-00444, 2021 WL 2467063 (S.D.W. Va. Jun. 11, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2021 WL 2744550 (S.D.W. Va. Jul. 1, 2021)(Chambers, J.), the claimant presented with primarily physical impairments, and was found to have nonsevere mental impairments, just like the Plaintiff here. Another noted similarity between these cases is that in the area of adapting and managing oneself, the ALJ found only mild limitations. Id. at *8.  In *Shank*, the Court observed that the ALJ used the same language in the written decision at step 2 as the undersigned noted *supra*. Ultimately, the Court found substantial evidence did not support the RFC assessment, because the ALJ did not "provide any insight into why he did not assess any mental RFC restriction. Rather, the RFC assessment focuses almost exclusively on Claimant's physical impairments." Id.[4] That is precisely what happened in this case.

---

[4] The Court noted further: "The boilerplate statement that the RFC assessment reflects the degree of limitation that the ALJ found in the 'paragraph B' mental function analysis is an insufficient substitute for substantive analysis, and it does not provide the level of articulation necessary for meaningful review." Id. at *9.

The Plaintiff has pointed out that this situation presented itself again in another case before the Court in *Jones v. Kijakazi*, No. 5:21-cv-00634, (S.D.W. Va. Sept. 22, 2022)(Eifert, M.J.), ECF No. 18, *report and recommendation adopted*, (S.D.W. Va. Nov. 28, 2022)(Volk, J.), ECF No. 19 (following *Shank* and remanding when the ALJ found mild limitations in two of the "paragraph B" criteria but then failed to mention his mental limitations after step 2). (ECF No. 12 at 6-7)

However, in another matter brought before this Court, *Wall v. Saul*, No. 2:20-cv-00460, 2021 WL 5225792, at *8 (S.D. W. Va. Nov. 9, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230989, at *1 (S.D. W. Va. Nov. 9, 2021)(Copenhaver, J.), the ALJ therein found the claimant had only mild limitations in all four broad categories of mental functioning, and also did not include any of those limitations in the RFC assessment.[5] Id. at *8. In that case, while the ALJ did not address the claimant's mental impairments or their resulting limitations any further beyond step 2, the Court found substantial evidence supported the RFC assessment, having observed that the ALJ "expressly stated that Claimant did not have 'any work-related mental limitations.' " Id.[6]

There is no question that the ALJ in this case did not mention or address any of the Plaintiff's mental limitations after step 2. From the undersigned's review of this matter, in light of the rulings of other Courts within this District in cases that presented the exact same situation as the one here, the undersigned is compelled to find the same. Just like in *Shank* and *Jones*, the ALJ here did not go beyond affixing the boilerplate concerning "paragraph B" criteria: while the ALJ

---

[5] Notably, Mr. Wall had been treated for his mental health issues with a psychiatrist, and received a consultative psychological examination as it related to his claim for benefits.

[6] In another matter before this Court, substantial evidence supported an RFC assessment that failed to include any of the mild limitations found in the four broad areas of mental functioning, however, the ALJ therein addressed the minimal findings of both providers and the opinion evidence, noting they did not preclude any further work-related restrictions. *Hunt v. Kijakazi*, No. 1:21-cv-00265, 2021 WL 9076248, at *10 (S.D.W. Va. Dec. 9, 2021)(Eifert, M.J.), *report and recommendation adopted*, 2022 WL 2719968 (S.D.W. Va. Jul. 13, 2022)(Faber, J.). The Court applied the same rationale in finding an RFC assessment that did not include any of the mild limitations in each of the four areas of functioning in *Hedrick v. Saul*, No. 2:20-cv-00449, 2021 WL 5230735, at *7 (S.D.W. Va. May 21, 2021)(Tinsley, M.J.), *report and recommendation adopted*, 2021 WL 5230987 (S.D.W. Va. Nov. 9, 2021)(Copenhaver, J.). In *Hedrick*, the claimant, like the Plaintiff herein, did not receive any specialized mental health treatment during the period under review. However, in both *Hunt* and *Hedrick*, the undersigned notes that the ALJ continued the review of the claimants' mental impairments beyond the second step of the sequential evaluation process.

16

acknowledged the mild limitations did not constitute an RFC assessment, but would "require a more detailed assessment" used at subsequent steps in the sequential evaluation process, the ALJ never followed through on this. Further, there is no explicit or express finding by the ALJ in this case that the Plaintiff's mild limitations did not result in any *work-related* limitations. See *Wall*, *supra*. Although the ALJ provided an adequate explanation for why the Plaintiff has mild limitations in two areas of mental functioning, there is no explanation for why the were excluded from the RFC assessment – this omission necessarily results in the undersigned having to speculate as to why, thus frustrating meaningful judicial review. Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015). Accordingly, the undersigned **FINDS** the RFC analysis is not supported by substantial evidence, as it lacks any explanation for omitting the Plaintiff's mild mental limitations as set forth in step 2.

Work History under SSR 16-3p:

The Plaintiff's other challenge to the ALJ's decision is that she failed to consider her work history in her "credibility" assessment. [7] 20 C.F.R. § 404.1529 requires a finding of the extent to which an individual's statements about pain or other symptom(s) and its functional effects can reasonably be accepted as consistent with the objective medical evidence and other evidence; that explains the factors to be considered in assessing the consistency of the individual's statements

---

[7] Effective March 28, 2016, SSR 16-3p superseded SSR 96-7p and therefore governed the ALJ's decision herein. See, SSR 16-3p, 2016 WL 1131509. The new Ruling eliminates the use of the term "credibility" from SSA policy because the Regulations do not use that term: "we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." See, 2016 WL 1119029, at *1. The Plaintiff appears to acknowledge the use of the term "credibility" is no longer appropriate when analyzing a claimant's subjective complaints, but still relies on the notion that her lengthy work history supports her "credibility." (ECF No. 12 at 9, fn5)

about symptoms; and states the importance of explaining the reasons for the finding about the consistency of the individual's statements.

Social Security Ruling 16-3p further directs adjudicators to use a two-step process for evaluating an individual's symptoms: first, it must be determined that the individual has a medically determinable impairment ("MDI") that could reasonably be expected to produce the individual's alleged symptoms; and second, the intensity and persistence of the individual's symptoms must be evaluated to the extent which they limit the individual's ability to perform work-related activities. See, SSR 16-3p, 2016 WL 1119029, at *3-4. This evaluation must be based on a consideration of all of the evidence in the case record. This includes, but is not limited to: (1) the medical signs and laboratory findings; (2) diagnosis, prognosis, and other medical opinions provided by treating or examining physicians or psychologists and other medical sources; and (3) statements and reports from the individual and from treating or examining physicians or psychologists and other persons about the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work.

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. § 404.1529(c)(4). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons . . . Factors relevant to your symptoms, such as pain, which we will consider include:
> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

Id. § 404.1529(c)(3).

It must be emphasized that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." See Manigo v. Colvin, 2015 WL 74954, at *5 (D. S.C. Jan. 6, 2015) (quoting Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000)). Indeed, "there is no particular language or format that an ALJ must use in his . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., No. 09–417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's opinion is sufficient if it "not only sets forth the facts used in rendering his decision, but it also provides a thorough examination of the medical evidence." Id.

To the extent that the Plaintiff alleges the ALJ failed to consider her work history, this allegation lacks merit: the ALJ explicitly found that the Plaintiff remained capable of performing her past relevant work ("PRW") as a bookkeeper, office manager and payroll clerk. (Tr. at 58) The ALJ noted that the Plaintiff's "detailed Work History Report and earnings record support that these

19

jobs qualify as PRW." (Tr. at 58, 295-302, 241-243, 244, 247-249)[8] Obviously, the ALJ could not have found the Plaintiff could perform PRW without having considered her "stellar work history." (ECF No. 12 at 9) In any event, the ALJ clearly performed the two-step process, and ultimately found the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence of record. (Tr. at 54-55) Nevertheless, the ALJ proceeded to examine the symptoms and their related effects from the Plaintiff's physical impairments only – and not once considered the Plaintiff's symptomology and limiting effects as related to her mental impairments. (Tr. at 54-58) Because the ALJ did not evaluate the Plaintiff's mental impairments beyond step 2 of the sequential evaluation, as noted *supra*, on remand, the ALJ ought to consider the Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms related to her mental impairments as well as the physical impairments.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **GRANT** the Plaintiff's request for remand (ECF No. 12), **DENY** the Defendant's request to affirm the decision (ECF No. 13), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings so that the ALJ may further consider any work-limiting effects

---

[8] During the administrative hearing, the Plaintiff testified that she wished she could work, and her work history indicated that she "always worked." (Tr. at 69)

from the Plaintiff's mental impairments as well as provide further analysis of her symptoms stemming from her mental impairments consistent with SSR 16-3p and Section 404.1529.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: July 31, 2023.



Omar J. Aboulhosn
United States Magistrate Judge